UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>J.A. CROSON LLC,<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful race-based and national origin-based employment practices and to provide appropriate relief to Charging Parties Ernest Hankerson ("Hankerson") and Cyrus Hawthorne ("Hawthorne") (collectively, the "Charging Parties"), and other aggrieved Black and Hispanic employees who were adversely affected by such practices. As alleged with greater particularity below, Defendant J.A. Croson LLC ("J.A. Croson") violated, and continues to violate Title VII of the Civil Rights Act of

1

1964 by subjecting Black and Hispanic employees to a hostile work environment based on their race and national origin and by retaliating against employees who complain of the hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII").

2. Venue is proper because J.A. Croson's corporate office is located in Sorrento, Florida and a substantial part of the events giving rise to Title VII violations occurred in Central Florida locations within the jurisdiction of the United States District Court for the Middle District of Florida, Ocala Division, pursuant to 28 U.S.C. §1391(b).

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 12203.

4. At all relevant times, J.A. Croson has continuously been doing business in the State of Florida and has continuously had at least 15 employees.

5. At all relevant times, J.A. Croson has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h)

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Ernest Hankerson and Cyrus Hawthorne respectively filed charges of discrimination against J.A. Croson alleging, among other things, that J.A. Croson violated Title VII.

7. The Commission issued a Letter of Determination on July 15, 2021, finding reasonable cause to believe that J.A. Croson subjected Charging Parties and a class of Black and Hispanic employees to a hostile work environment and that J.A. Croson retaliated against Charging Parties for complaining about the hostile work environment.

8. Prior to initiating this lawsuit, the Commission attempted to correct the unlawful employment practices alleged herein through conciliation to remedy the discriminatory practices and provide appropriate relief. The Commission was unable to secure from J.A. Croson a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### General Background

10. J.A. Croson is a plumbing and HVAC contracting company based in Sorrento, Florida that services Florida, Alabama, Georgia, North Carolina, South Carolina, Tennessee, and Virginia.

11. J.A. Croson offers a plumbing apprenticeship program to its employees.

12. Plumbers and Plumber's Helpers are supervised by a Foreman. In turn, the Foreman has the authority to delegate assignments, issue disciplinary action, and terminate his subordinates.

13. On or around August 15, 2016, J.A. Croson hired Hawthorne as a Plumber's Helper to work at its Central Florida construction projects.

14. On or around July 29, 2019, J.A. Croson hired Hankerson as a Plumber's Helper to work at its Central Florida construction projects.

### Charging Parties

15. Throughout their respective employments with J.A. Croson, Charging Parties personally heard, and learned about, racially and ethnically offensive language in the workplace.

16. For example, Foreman Heath Mercer used racial slurs such as "nigger" (hereafter "n***er") on a weekly basis. Mercer supervised both Hawthorne and Hankerson.

17. Other foremen such as Robby Champion, Matt McCoy, and "J.R." similarly used racial slurs such as "n***er" while in the workplace on a weekly basis.

18. Project Manager Calvin Christian repeatedly referred to Black employees as "biscuit lips," "fucking bitches," "bubba," "boy," and "motherfuckers."

19. Charging Parties heard Piecework Plumber "Jerry" use racial and ethnic slurs, such as "n***er" and "wetback," in the workplace on a weekly basis.

20. J.A. Croson managers also harassed Black employees by, among other things, hindering their progress in the apprenticeship program. For example, Black employees were disproportionately assigned manual labor assignments that did not count as work credit towards the apprenticeship program.

21. Hankerson and Hawthorne both complained to Project Manager Christian about the ongoing racial harassment by Mercer during their respective employments with J.A. Croson. Likewise, Hankerson complained about the racial harassment directly to J.A. Croson's corporate office by phone call.

22. In retaliation for his complaint, Hawthorne received an unwarranted disciplinary action; was assigned disproportionate and less desirable work assignments; and was terminated on December 8, 2020.

23. In retaliation for his complaint, J.A. Croson terminated Hankerson's employment on December 7, 2020.

24. Mercer stated that people were complaining to J.A. Croson, and that J.A. Croson decided to "get rid of the cancer."

25. Prior to their respective terminations, neither Hankerson nor Hawthorne had been written up for poor performance.

26. Because of J.A. Croson's unlawful conduct, Hankerson and Hawthorne were harmed and suffered damages.

<u>Class of Black and Hispanic Employees</u>

27. Managers used racial slurs, such as "n***er," in the presence of Black employees in the workplace on a weekly basis.

28. Managers used ethnic slurs and insults in the presence of Hispanic employees on a weekly basis.

29. For example, Hispanic employees were referred to as "wetbacks," "stupid Mexicans," and "fucking Puerto Ricans."

30. Managers and employees alike subjected Black and Hispanic employees in Florida to intimidating and hostile treatment. Mercer and Christian often yelled at and berated Black and Hispanic employees in an aggressive and unprofessional manner. Mercer and Christian did not treat white employees in this manner.

31. Several J.A. Croson managers were also known to openly display Confederate flags on their personal vehicles, and they held team meetings in the parking lots in view of the Confederate flags.

32. In addition to subjecting employees to racially and ethnically inflammatory language, J.A. Croson managers perpetuated a hostile work environment by purposefully delegating assignments based on race and national origin.

33. White employees were generally assigned favorable tasks, such as plumbing, pipe work, and piecework, while Black and Hispanic employees generally received laborious tasks such as digging ditches.

34. On multiple occasions, J.A. Croson managers did not permit Black and Hispanic employees to access the company trailers while allowing white employees to do so.

35. J.A. Croson managers also purposefully disadvantaged Black and Hispanic employees enrolled in J.A. Croson's apprenticeship program.

36. J.A. Croson regularly impeded Black and Hispanic employees from completing the apprenticeship program.

37. J.A. Croson managers also actively impeded Black and Hispanic employees from receiving managerial opportunities to ensure the hostile work environment would persist.

38. Because of J.A. Croson's unlawful conduct, a class of Black and Hispanic employees were harmed and suffered damages.

## STATEMENT OF CLAIMS

### Count 1: Hostile Work Environment (Ernest Hankerson)

39. As set forth in Paragraphs 10 through 21 and 26, J.A. Croson subjected Hankerson to a hostile work environment based on race, Black, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

40. The effect of the practices complained of in Paragraphs 10 through 21 and 26 has been to deprive Hankerson of equal employment opportunities because of his race.

41. The unlawful employment practices complained of in Paragraphs 10 through 21 and 26 were intentionally done with malice and/or reckless indifference to Hankerson's federally protected rights.

### Count 2: Hostile Work Environment (Cyrus Hawthorne)

42. As set forth in Paragraphs 10 through 21 and 26, J.A. Croson subjected Hawthorne to a hostile work environment based on race, Black, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

43. The effect of the practices complained of in Paragraphs 10 through 21 and 26 has been to deprive Hawthorne of equal employment opportunities because of his race.

44. The unlawful employment practices complained of in Paragraphs 10 through 21 and 26 were intentionally done with malice and/or reckless indifference to Hawthorne's federally protected rights.

### Count 3: Hostile Work Environment (Class Members)

45. As set forth in Paragraphs 10 through 12 and 27 through 38, J.A. Croson subjected a class of Black and Hispanic employees in Florida to a hostile work

environment based on race, Black, and national origin, Hispanic, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

46. The effect of the practices complained of in Paragraphs 10 through 12 and 27 through 38 has been to deprive the aggrieved class members of equal employment opportunities because of their race and national origin.

47. The unlawful employment practices complained of in Paragraphs 10 through 12 and 27 through 38 were intentionally done with malice and/or reckless indifference to the class' federally protected rights.

### Count 4: Retaliation (Ernest Hankerson)

48. As set forth in Paragraphs 10 through 21 and 23 through 26, J.A. Croson retaliated against Hankerson as a result of his complaints of race-based harassment to J.A. Croson management by terminating his employment in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a)(1).

49. The effect of the practices complained of in Paragraphs 10 through 21 and 23 through 26 has been to affect the terms and conditions of employment for Hankerson, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his race.

50. The unlawful employment practices complained of in Paragraphs 10 through 21 and 23 through 26 were intentional.

51. The unlawful employment practices complained of in Paragraphs 10 through 21 and 23 through 26 were intentionally done with malice and/or reckless indifference to Hankerson's federally protected rights.

### Count 5: Retaliation (Cyrus Hawthorne)

52. As set forth in Paragraphs 10 through 22 and 24 through 26, J.A. Croson retaliated against Hawthorne as a result of his complaints of race-based harassment to J.A. Croson management by terminating his employment based on pretextual reasons, in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a)(1).

53. The effect of the practices complained of in Paragraphs 10 through 22 and 24 through 26 has been to affect the terms and conditions of employment for Hawthorne, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his race.

54. The unlawful employment practices complained of in Paragraphs 10 through 22 and 24 through 26 were intentional.

55. The unlawful employment practices complained of in Paragraphs 10 through 22 and 24 through 26 were intentionally done with malice and/or reckless indifference to Hankerson's federally protected rights.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

56. Grant a permanent injunction enjoining J.A. Croson, its officers, agents, servants, managers, employees, and all persons in active concert or participation with them, from participating in discriminatory conduct based on race and national origin including, but not limited to, permitting a hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

57. Order J.A. Croson to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black and Hispanic employees and which eradicate the effects of its past and present unlawful employment practices;

58. Order J.A. Croson to make Charging Parties whole by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of J.A. Croson's unlawful employment practices including but not limited to reinstatement and/or front pay;

59. Order J.A. Croson to make Charging Parties and the class of Black and Hispanic employees whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

60. Order J.A. Croson to make Charging Parties and the class of Black and Hispanic employees whole, by providing compensation for past and future pecuniary

losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

61. Order J.A. Croson to pay Charging Parties punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

62. Order J.A. Croson to pay the class of Black and Hispanic employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

63. Grant such further relief as the Court deems necessary and proper in the public interest; and

64. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated:  September 30, 2022                    Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel
U.S. Equal Employment Opportunity Commission
131 M. Street, N.E.
Washington, DC 20507

ROBERT WEISBERG
Regional Attorney
Florida Bar No. 285676
Kristen M. Foslid
Supervisory Trial Attorney

                                      Florida Bar No. 688681
                      U.S. Equal Employment Opportunity
                                                  Commission
                                  Miami District Office
                        100 S.E. 2nd Street, Suite 1500
                                    Miami, FL 33131


                              */s/ Melissa M. Castillo*
                                  Melissa M. Castillo
                                        Trial Attorney
                                Florida Bar No. 1025338
                      U.S. Equal Employment Opportunity
                                                  Commission
                                  Tampa Field Office
                         501 E Polk Street, Suite 1000
                                     Tampa, FL 33602